May it please the Court, Counsel, David Haida, Criminal Justice Act Attorney for Donovan James Bolen. It's my understanding we have 20 minutes. I would like to split 10 of those minutes between myself and Mr. Ackley. Can you please watch the clock? And I will reserve two minutes for rebuttal. Before the Court is Mr. Bolen's appeal with regards to several evidentiary errors of the Court, specifically, Mr. Bolen's argument is that the district court erred with regards to the leading testimony elicited by the government's key witness in this case, Candace Tronell. Second, the district court erred in the agent Gantt allowing to testify as to the 13 stolen firearms traveling in interstate nexus. Third, the district court erred with regards to Jeffrey Sands' testimony regarding the source and origins of the fire as to the USDA pickup and the Western Court door facility. Now, first, with regards to Candace Tronell, the Federal Rule of Evidence 611C precludes as a general matter the Court from allowing the government to elicit leading questions from the witness in this matter, Ms. Tronell. As the testimony was clear, the Court essentially carte blanche granted the government the ability to have Ms. Tronell testify. If we look at the first question of the government in the questioning of Ms. Tronell, Mr. Hawes specifically asked Ms. Tronell, who is 16 years old, capable of testifying on her own accord, question, do you remember one night when there was some fire set in Payette? The objection leading the Court, I'm going to give counsel a little bit of leeway, but be careful, Mr. Hawes, and don't abuse the privilege, but I'll give you some leeway with this witness. Go ahead. The Court, by allowing that leading question to be answered, set the stage for her further testimony. That testimony was permeated by the leading questions of the government of a witness who was at that time 16 years of age, had told three different stories to law enforcement agents. So the Court, by allowing the government to elicit that testimony from the get-go, of leading questions offered by Mr. Hawes, set the stage for the Court in abusing its discretion in allowing that form of question to continue. The second – I'll point to a second example of that, and that's later with regards to the next day, but once again, and then did Mr. Van Bargen begin to drive away. The question elicited another yes, with the Court saying, I'm sorry, counsel, counsel, let's rephrase and try to avoid leading questions. With the prosecutor once again stating, Your Honor, I am trying. And that's contained within the excerpts of record, the transcript on page 101. So under the Rule 611c2, I guess it is, where it says the Court has broad discretion to permit the use of leading questions, and we won't reverse it, this is in United States v. Nelson, unless the judge's action amounted to or contributed to denial of a fair trial. So we give broad discretion to the Court to ask that sort of leading questions in the circumstances, and I think some of the circumstances here was that she was a minor, and that she was a relative, and that she had actually been at the scene of the crime in the truck, or driving with the two defendants. And so in order to say this is a reversible error, there has to be something to say that your client was denied a fair trial. So maybe you could point us to that or help explain that. Well, Your Honor, it goes back to, again, the cumulative error issue that we have alleged. So taking part in parcel between the leading questions that were elicited by the government and allowed by the Court, which permeated her testimony, then with regard to the fact that she was denied a fair trial, that's not an error unless it was an abuse of the district court's correct discretion. And we have a very generous standard for abuse of discretion under Hinkson, illogical, implausible, without support in the record. And so here there was evidence that she was a minor, she was a relative, et cetera, that the district court could point to. So we need to first say it was an abuse of the district court's discretion in order to say there was an error at all, right? Well, generally, when the Court has made that determination, when it's allowed within that discretion, it's usually with regards to a young minor victim. And we're talking about sexual abuse of a minor, for example. We're taking an 8-year-old child. We're taking a child of a young tender age that may not be able to articulate specifically what set of facts that they can. However, this is a different situation. This is a 16-year-old woman, as far as her testimony goes, based upon three different sets of events as she enlisted that testimony to various law enforcement officials and ultimately the jury. So with that being said, this is not a unique circumstance where the Court did not abuse its discretion, given the fact that her age and circumstances don't warrant that. So what I'm trying to say is that it would be illogical to think that the minor cousin of the defendant, who I guess at one point indicated she was afraid of getting him into trouble, would need that it would make sense to have leading questions. I'm not sure why that would be illogical, but she wouldn't give her testimony without such questions. So we would need to say that's illogical. I guess. And I understand where the Court's coming from, but given the context of the initial question that was asked by the government, whether or not these fires were set, which is the – it's clear that it was a leading question, and then moving forth from that point forward, whereby the defendant objected to each one of these questions, and the Court ultimately overruled them when the Court gave the government broad discretion, there was clearly an abuse there. So moving on with regards to Agent Gantt's testimony, pursuant to Rule 7002 of the Federal Rules of Civil Procedure, there must be the adequate foundation for him to be able to testify that the 13 firearms moved in interstate commerce. And that simply was not done by the agent, given the fact he did not testify as to each and every firearm, where and when it was manufactured, and on the – and or on the date that it traveled in interstate commerce. So without being able to testify, other than the broad assertion that they traveled in interstate commerce, there was not the adequate foundation for his expert opinion to be had in the Court, given that these firearms had traveled there. Well, I didn't totally understand that argument. I mean, he explained his methodology. He said, here's what I did. He explained his expertise, and then he explained his methodology. And normally we would say that would be sufficient for a foundation for then giving your expert opinion. Why wasn't that enough here? Let me give you a short example, because I'm running short on time here. If one element of a particular crime is that a car must have traveled in interstate commerce based upon its manufacturer, let's take an example of a Ford or a BMW. It may have been manufactured in Detroit or it may have been manufactured in another State, but we still have to point to the source and origin of that specific car. So depending on where it was manufactured, just like a firearm, there still must be adequate foundation as to each and every one of those firearms, not a blanket statement that, well, I reviewed and I looked, and now they all traveled in interstate commerce. If I may reserve the rest of my time. All right. I think you have 41 seconds, but we'll give you a minute. May it please the Court. I'm Mark Ackley for David Von Bargan. Mr. Von Bargan appeals the sentence of 35 years or stated in months, 420 months imposed by the Federal District Court following his conviction or offense under 924C, two counts of arson and possession of firearms. Mr. Von Bargan submits that this sentence violates the Fifth Amendment prohibition on cruel and unusual punishments as a sentence grossly disproportionate to his offense. Thirty-five years or 420 months is severe and represents over twice what the sentencing court would have imposed absent the mandatory minimums in this case. That 420 months is harsh as beyond any real dispute, and for Mr. Von Bargan, represents a functional equivalent of a life sentence. Beyond looking at the severity of the punishment, the Court is directed to compare that with the gravity of the offense, and 924C offenses are certainly serious. They categorically represent crimes of violence. However, the Eighth Amendment analysis is not a categorical analysis. The Court is directed to look beyond labels. When assessing the gravity of the offense, the Court assesses the actual conduct at issue as the offense was committed and the actual harm. In light of the purpose of the law and the defendant's motive in criminal history. The Molotov cocktails in this case were not used with the intent to injure, terrorize, or spread fear. They were used at a time and at locations that in fact minimized the risk of injury, and the government notes that there was a risk of injury to firefighters. Of course, that would be the case in any arson, which does not carry a minimum sentence of 30 years, instead carries a minimum sentence of 5 years. And if substantial risk of injury is shown in an arson, then the mandatory minimum is increased from just 5 years to only 7 years, again, nowhere near the 30 years that was imposed under 924C. This law in particular, mandating a 30-year minimum, was meant to deter the terrorist use of dangerous weapons. And while the conduct met the elements of the offense, the conduct did not meet the purpose of mandatory minimums. As stated by some of its drafters, one representative said, criminals who commit such crimes are making a statement to the world. I will hurt you and kill you if you get in my way. Another, Senator Helms, stated that this severe punishment is reserved for those who terrorize citizens. This was not the case here. Mr. Von Bargen never intended to terrorize anyone. The Molotov cocktails did not even explode. In fact, they acted more as an accelerant and a lighter. The circumstances of this offense, while technically meeting the elements of a 924C, are more akin to an arson. Importantly, Mr. Von Bargen is not a terrorist. There's no violence in his history. Paraphrasing the government at sentencing, Mr. Von Bargen's criminal history is remarkably unremarkable for a 50-year-old offender. He was category one with zero criminal history points. Everyone agrees. Those who wrote the letters of support, the probation officer who wrote the sentencing recommendation, and the government, that this conduct was clearly outside Mr. Von Bargen's character. Now, once that threshold inference of gross disproportionality has been met, the Court, the Supreme Court, has said that it's helpful to compare sentences both within and outside the jurisdiction. There were not a lot of cases briefed by the parties. The government did cite to a case at that point, I'm not sure if it was published, but it has been published, involving Edgar Steele, who was prosecuted in the Federal District Court. Mr. Ackley, you know, we're not here to decide whether this sentence was reasonable, right, or even if it was the – might be considered excessive under the guidelines. I mean, this is really a question of congressional power, right? You know what it comes down to? That is – Under the Eighth Amendment. No, Your Honor, I respectfully disagree. I do not think that that is the standard. Now, in our – Well, that's the question, isn't it? The question before us? It's just a factor, of course, Your Honor, is that the Court in assessing the Eighth Amendment does give broad and great deference to the legislature, and our position is that consistent with this Court's analysis in the Eighth Amendment context – So you know all the cases that have been decided under the Eighth Amendment. It seems to me there are, you know, a number of them where the facts were, I would say, you know, much more in favor of the defendant in terms of an excessive – excessiveness argument under the Eighth Amendment than in this case. How do you get around those cases? Well, Your Honor, some of the facts were concedingly. For instance, the cases that involve bad checks or even the failure to register cases involve generally more passive conduct. But those aren't the only facts in weighing the proportionality of the offense versus a sentence. Those courts also looked significantly at the offender's criminal histories and how those histories related to the purpose of the statute. So in one failure to register case, the Court found that it was cruel and unusual where the registration requirement did not really further the purposes of the – behind the punishment, whereas another registration case which required updating the registry and updating the offender's address did implicate the purposes of the mandatory minimum in that case. So, yes, Your Honor, I can see this is not a bad check case. At the same time, it's not like the case of Edgar Steele, who used pipe bombs in an apartment in Maine, his wife and mother-in-law. This was the use of dangerous devices, but not against people. It was against property. And the criminal law does recognize a distinction between violence against people versus property. So, yes, it's not a bad check case. It's not a regulatory type offense. But at the same time, those aren't the only factors. Other factors include looking at the individual's motive and criminal history in light of the purposes of the statute. The other case which comes to mind is the case of our co-defendant, Donovan Bolin. He received 444 months, and he has not argued that his sentence was cruel and unusual. But that case is also different. That case is – that sentence does not represent a functional equivalent of a life sentence. Mr. Bolin was, I think, 20 years old approximately at the time of the sentencing. Mr. Bolin perpetually lied and obstructed justice in that case. The sentencing recommendation by the probation officer noted that, unlike Mr. Bolin, Mr. von Bargan has no criminal record of note and no storied history. And I failed to mention that in the Edgar Steele case, where there was an intent to blow up a vehicle with the defendant's wife and mother-in-law, that sentence in that case was 360 months, 5 years less than the sentence imposed in Mr. von Bargan's case. This is a rare case. Destructive devices, though, were effectively used as accelerants, not weapons to terrorize or to kill. And Mr. von Bargan is a rare individual without a criminal record. Thirty-five years is undoubtedly a harsh sentence. Under the circumstances of this case, it's cruel and unusual punishment. Thank you. We'll hear from the government. May it please the Court. My name is Christian Asker, and I'm here on behalf of the United States. We'll start with Mr. Bolin. The first matter that he complains of is that there was insufficient evidence to sustain a conviction on count one. It is the government's position that any rational trier fact could have found the essential elements of the offense beyond a reasonable doubt for three particular reasons. First of all, the jury was entitled to credit Candace Trinnell's testimony. I want to clarify the record. I believe counsel stated that Ms. Trinnell was a minor, 16. She was 16 at the time of the offense. She was 18 when she testified. Obviously, Rule 29 motion, it's not appropriate for the judge to consider the credibility of the witness. Ms. Trinnell was an eyewitness. I realize that her defense has attempted to characterize her testimony as giving three different versions or contradictory testimony. I believe it was clear on her rebuttal witness questions that it wasn't inconsistent. When initially interviewed right after the incident, she left out essential elements, and she explained to the jury that she did so because she didn't want to see her cousin get into trouble. She didn't testify inconsistently. She didn't give different versions. She withheld evidence the first time. When she was interviewed subsequent to that, she gave more detail. And when she testified at trial, she was consistent with the testimony that she gave several weeks after the incident. And she explained that as she loved her cousin, she didn't want to see him get in trouble, and so she initially left out some stuff when they were arrested that night. Secondly, there was circumstantial evidence to support the conviction in this case. As I noted, Mr. Poland was convicted not only of the use and carrying of a fire of a destructive device in relation to a crime of violence. The jury also found him guilty of possessing destructive devices and furtherance. And really what he's complaining is that there was no evidence as to the element of use. Even if you determined that there wasn't, and there clearly was, the conviction still stands based on the possession and furtherance of. The circumstantial evidence, even if you take out Ms. Trinnell's testimony, was sufficient under the standard that we have here today to sustain the conviction on count one. Mr. Poland was arrested pulling out of he was a passenger in a vehicle that was pulling out in the middle of the night of the parking lot of the world's largest pawn shop. Inside of the vehicle, he had two Molotov cocktails, two sets of walkie-talkies, two sets of gloves, two sets of ski masks, a fictitious plate on the vehicle. The real plate was underneath the seat. Thirteen firearms, twelve of which one was an antique. Twelve ultimately were determined to be firearms, with the price tag still on them from the world's largest pawn shop. So are you saying that even if it was an error, the district court abused its discretion in allowing Trinnell to testify to leading questions, the error was harmless? Is that what you're arguing? Yes. And did the district court abuse its discretion in allowing that testimony? That was the main argument I think I heard him make today, opposing counsel make today. Clearly, the district court did not abuse its discretion.  Most of them were on preliminary matters. The court sustained the objection of one. Twice, the court asked the counsel to rephrase the question. And the statement that Your Honor gave in response to defense counsel's argument, did this prevent him from getting a fair trial? It clearly did not. Even though the witness was not a minor, she was 18. She was testifying against her cousin. There were family members present in the courtroom. She was obviously very nervous. And the district court is given a lot of authority and a lot of discretion in handling the matters of leading question. And the district court handled that very appropriately in this case. There was no discussion on this point in the district court, was there, about, you know, in other words, you didn't ask the district court, counsel, and you said, well, may I have permission to lead this witness or anything like that? There was not, Your Honor. There was no ---- It just happened. Correct. I mean, Delores questioning the witness, maybe thought she needed help or something like that, and started asking leading questions, right? Yes. That's how the issue first came up. There was a leading question, and Mr. Hyde objected. And the court said, look, I'm going to give you a little bit of leeway. The court didn't explain itself why he was granting that leeway, whether it was as a matter of course or whether it had to do with the fact that she was a relative and given her age. But nonetheless, the court has the discretion to handle that matter, and it did so appropriately. And you're saying that even if that was an error, it was harmless. I think opposing counsel says, well, it wouldn't be harmless if you took into account the other errors cumulatively. What's your response to that? Well, first of all, there aren't any other errors. The issue as to the expert opinion by both Special Agent Gant and the Deputy Chief Fire Inspector Sands, the issue of the interstate nexus really goes to the weight not to whether Special Agent Gant was qualified to give an opinion. I think he flushed that out a little bit in that he obviously had the expertise to provide an opinion on whether the firearms had traveled. And they're not even really suggesting that he didn't have that expertise to give an opinion. What they're arguing is that in giving that opinion, he was somehow required to state where each firearm was manufactured. That goes to the weight. Now, the jury could obviously demand that and say, well, we didn't hear where that particular firearm was manufactured. Therefore, we don't believe that there's evidence beyond a reasonable doubt. But in essence, he testified that each particular firearm had traveled in interstate commerce. And he explained how he came to that determination, and he gave numerous reasons of why he came to that conclusion. And it was based on the fact that, A, there's only one firearm manufacturer in the State of Idaho. Therefore, every other particular firearm would have to travel in interstate or foreign commerce in order to be present in the District of Idaho. He also specifically stated two firearms, the Taurus, which was manufactured in Brazil, and the, I believe it was the Ruger, although I can't remember exactly, was either manufactured in Prescott, Arizona, or Connecticut. One of those particular firearms would sustain a conviction on that count as all 13 or all 12 were contained in one single count of possession of the firearm. As to the chief fire inspector, likewise, it wasn't an issue of whether he was qualified. They're saying – well, actually, in that case, they did frame the issue as he was unqualified because he hadn't got his certificate yet. Obviously, that is not the standard of whether someone gets an expert opinion. He explained that he had investigated over a thousand incidences, including 60 to 70 different fires. He had taught on the source and origin of fires. He had attended classes. He was working towards his certified fire investigator certificate. And the district court correctly concluded that he could give an expert opinion. Now, whether he was a certified fire inspector goes to the weight, and the jury could have said, well, we realize that he has done significant work, but he hasn't quite achieved this one particular certificate, so we will discount his opinion. But that doesn't assign any error to the district court. And so in response to your question, there are no other errors. And so the cumulative error doesn't apply. The district court did an error as to leading – allowing limited leading questions in this particular case. There was no error in allowing the expert testimony of either the ATF agent or the Chief Deputy Sands. And there was sufficient evidence to sustain the conviction on count one, even if you believe the defendant's theory that there was insufficient evidence as to use, there was an alternative theory of guilt that wasn't challenged. I have nothing further on Boland unless you have any other questions, and I'll – Kagan. Apparently not. Okay. Thank you. Mr. Von Bargan. The Eighth Amendment forbids extreme sentences that are grossly disproportionate to the crime. And before you get past anything else, you have to first determine the gravity of the crime and the severity of the sentence. And when you look at this particular case, there's been much – and I think the most compelling argument is, look, if they would have just started fires and this would have just started fires, that's really what this case is about, this is arson and nothing more. And so when you apply it in the technical sense under 924C and you result with a 30-year mandatory minimum consecutive sentence, that's grossly disproportionate. I don't agree with that viewpoint. This is not an arson case. This is a case where Mr. Von Bargan and Mr. Boland constructed four incendiary bombs, which are by definition destructive devices and thereby firearms under the appropriate statute. They used these incendiary bombs – well, they used two of them to start two fires. And that's why it's important to know the alternative theory of guilt, that they possessed two other incendiary bombs in furtherance of the crimes of violence. And that continued until they were arrested. So this is not a case where they could have taken gasoline and matches and lit a whole lumberyard. First of all, it was probably unsuccessful or not nearly as successful as the inferno that they created in this case. But they possessed those two bombs throughout this. Now, there's always the actual violence, the actual harm that occurs, which was significant in this case, both to the damage of property and the potential damage to human – human beings. However, there's also the potential violence. When you have two individuals that set fires and go to steal assault rifles and other firearms from a pawn shop, one does not have to be very creative to think of what possibilities they had had this case not gone down the way it did. What if someone else, someone followed them because they looked suspicious, that were not vehicles? They had at their disposal two Molotov cocktails, two incendiary bombs that they could have used. So the potential for violence is great, and the actual violence is great. And so only if, looking at the gravity of the crime and the severity of the sentence – and I don't mean to be flippant with, you know, the sentence was – there's no doubt that it was decided by both parties. You know, this Court recently upheld a sentence of 745 years. Thirty-five years is no doubt a very lengthy sentence, but it pales in comparison to the 745 and the 746 years that this Court upheld under a very similar – under the same statute, 924C. And there was very little discussion. For example, U.S. v. Harris is a 95-year sentence. Those were two football players from the University of, I believe, Fresno, had no significant criminal history. They were obviously college students. They were college athletes. Had it not been for the series of robberies in which they were convicted of 924C, they had a lot of things going for them. So this Court upheld a sentence of 95 years on one of those individuals. And interestingly enough, in doing so, this Court said a sentence which is within the limits set by a valid statute may not be overturned on appeal as cruel and unusual. Now, that language was not used when this Court decided U.S. v. Major. That was the case in which a sentence of 745 years was upheld. But it seems pretty clear that the case law is very clear that, generally speaking, a sentence that's within the statutory maximum will be upheld. But I think this Court should clarify and reiterate Harris that a sentence which is within the limits set by a valid statute cannot be overturned on appeal as cruel and unusual. End of argument. And so you really don't even get to the issue of intra- or infra-jurisdictional comparison in this case. As we stated in our brief, if you do choose to go there, there's the example in the background to show that the 35-year sentence in this case, compared to others that are similar in nature, does not bring it within that extreme situation, extreme and rare, where you would overturn it. The defendant attempts to compare this case. I believe they cited the average sentence for every case. And that's not the test here. If you don't have any further questions, I have nothing further. Apparently not. Thank you. Thank you. I believe I have approximately 40 seconds left. You have two minutes because your co-counsel didn't use up all his time, so. Would you prefer any rebuttal time? I'll try to brief then. All right. With regards to the testimony of Jeffrey Sands, there simply wasn't the foundation laid there for him to get there. As asked by the government and as found by the court, there was no certification that he was a certified fire investigator. Yes, he may have this, what he refers to in his own experience, all these qualifications, but still, in light of Rule 702, the testimony still must be the product of reliable principles and methods. And without having him that – without him possessing that certification, ultimately that opinion, that expert opinion, can't be elicited by the government and allowed by the court. So with that being said, I would ask for the relief that Mr. Boland has requested of this Court, based upon the cumulative error that's before the Court and otherwise. Thank you. Thank you. Thank you, Your Honor. Justice Scalia, in his Harmelin opinion, said that in some cases, there will be a negligible difference between life without the possibility of parole and other sentences. For instance, even a lengthy term sentence without eligibility for parole given to a 65-year-old man. Now, Mr. Von Bargan was 50 – approximately 50 years old, a little bit over that. He has a release date with assuming good time credit of November 2041. If he survives 30 years behind bars, which generally reduces life expectancy – in fact, the lifespan for the average inmate is 76 years old, for the average white male – even if he does survive, he'll have no meaningful opportunity for the use of any liberties that are restored to him upon that release. Your Honor, the government asked this Court to adopt the standard that a sentence within the statutory range cannot be attacked as unconstitutional. Of course, that is not the standard. As the Court noted, a sentence that's been determined to be appropriate by Congress or the legislature is given deference, but that deference does have limits. And within the Eighth Amendment analysis, the Court looks overall at the sentence, whether the sentence imposed furthers the purposes of the statute, given the severity of the offense and the gravity of the offense. And then finally, Your Honor, the government says that this case really is now about arsons, but it's undisputed. The evidence overall was that this case was about arsons and a burglary. The plan was to start fires. The method used happened to be destructive devices. Of course, those destructive devices did not work as anticipated. The first fire, the Molotov cocktail, did not explode. The second fire, the evidence was that it did not work properly. The expert testimony in the case was that these fires occurred through Molotov cocktails, but not through the use of major explosions. As we argued and as we continue to argue today, if the contents, the ingredients, the incendiary materials were simply poured, as may have been the case in this case, and lighted with a lighter, in this case the wick, the effects would have been exactly the same, and yet it would have only been an arson with a mandatory minimum of 5 years. Thank you, Your Honors. Thank you. All right. The case of the United States v. Bowman and the United States v. Von Bargan are submitted and we're adjourned for this session. Thank you.
judges: Alarcon, Tashima, Ikuta